# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

<table>
<tr><td>

BRENNAN CENTER FOR JUSTICE<br>
AT NEW YORK UNIVERSITY<br>
SCHOOL OF LAW,<br><br>

        Plaintiff,<br><br>

    v.<br><br>

U.S. DEPARTMENT OF JUSTICE,<br><br>

        Defendant.

</td><td>

Civil Action No. 18-1841 (ABJ)

</td></tr>
</table>

## MEMORANDUM OPINION

Plaintiff, the Brennan Center for Justice at New York University School of Law, has sued the Department of Justice ("DOJ" or "defendant") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* Compl. [Dkt. # 1]. Plaintiff requested documents from the DOJ Civil Rights Division in connection with a letter that the Chief of the Voting Section sent to several states seeking information relating to compliance with the National Voter Registration Act and the Help America Vote Act. *Id.* ¶¶ 8–9. The agency conducted a search and released 407 pages of documents, in full and in part, asserting that FOIA Exemptions 5 and 6 applied to the withheld information. Pl.'s Statement of Undisputed Facts [Dkt. # 24-2] ("Pl.'s SUMF") ¶¶ 8–10. It also withheld over 20,200 pages under FOIA Exemptions 5, 6, 7(A), and 7(C). *Id.* ¶ 14.

Pending before the Court are the parties' motions for summary judgment. Def.'s Mot. for Summ. J. [Dkt. # 21] ("Def.'s Mot."); Pl.'s Cross-Mot. for Summ. J. [Dkt. # 24] ("Pl.'s Cross-Mot."); Pl.'s Mem. in Supp. of Pl.'s Cross-Mot. [Dkt. # 24-1] ("Pl.'s Mem."). Upon review of the parties' briefs and the full record in the case, the Court will grant in part and deny in part

defendant's motion for summary judgment and grant in part and deny in part plaintiff's cross-motion for summary judgment.

## BACKGROUND

### I. The Request

On June 28, 2017, T. Christian Herren, Jr., the Chief of the DOJ Voting Section, sent a letter to all states covered by the National Voter Registration Act ("NVRA") (the "Letter"), 52 U.S.C. § 20501 *et seq.* Pl.'s FOIA Request, Ex. A to Compl. [Dkt. # 1-5] at 1 ("FOIA Request"). The Letter requested information regarding the states' procedures for compliance with the statewide voter registration list maintenance provisions of the NVRA and the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq. Id.* Specifically, it asked for each state's statutes, regulations, and policies relating to voter registration, as well as data regarding confirmation notices, removals from the voter registration list, and active and inactive registered voters. *Id.* at 2. The Letter stated that the Department of Justice planned to review the states' procedures in an effort to assess compliance with the laws, and that it planned to analyze the voter registration data reported by each state and provide it to the U.S. Election Assistance Commission as part of its biennial Election Administration and Voting Survey. *Id.* It called for a response within thirty days. *Id.* at 2.

In a FOIA request dated July 20, 2017, plaintiff sought the following documents from the Civil Rights Division:

1. All documents the Department of Justice ("DOJ" or "Department") received or receives from state or local election officials in response to the Letter.

2. All communications and documents, including but not limited to emails and memoranda, between any DOJ officer, employee, or agent, or any White House liaison to the Department, and any other person, including but not limited to any officer, employee, or agent of the White House or

the Presidential Advisory Commission on Election Integrity concerning the Letter.

*Id.* at 2.  Plaintiff requested expedited processing of its FOIA Request.  *Id.* at 3–4.

DOJ acknowledged receipt of the FOIA Request on July 24, 2017.  Declaration of Tink Cooper, Acting Chief of the Freedom of Information/Privacy Act Branch, Civil Rights Division, DOJ [Dkt. # 21-1] ("Cooper Decl.").

## II. Procedural History

Prior to submitting the FOIA Request at issue in this case, plaintiff submitted a different FOIA request in May of 2017, asking DOJ to produce documents related to the Presidential

Advisory Commission on Election Integrity ("PACEI"). Pl.'s SUMF ¶ 3. That request (the "SDNY FOIA Request") is the subject of separate litigation in New York.[1]

In the fall of 2017, the parties had several discussions regarding the status of plaintiff's FOIA Request in this case. Pl.'s SUMF ¶ 5. In March of 2018, defendant stated that it needed to coordinate with the U.S. Attorney's Office for the Southern District of New York, because that

---

1 In that request, plaintiff sought the following records:

1. All communications, including but not limited to emails and memoranda, between any Department of Justice ("DOJ" or "Department") officer, employee, or agent, or any White House liaison to the Department, and any other person, including but not limited to any officer, employee, or agent of the White House or DOJ, or any member of the presidential transition team or the presidential campaign of Donald Trump, regarding the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system.

2. All communications, including but not limited to emails and memoranda, between any Department officer, employee, or agent, or any White House liaison to the Department, and any member of the Presidential Advisory Commission on Election Integrity, other than Vice President Michael Pence, since November 8, 2016.

3. All documents relating to the Presidential Advisory Commission on Election Integrity or any other effort since November 8, 2016 to establish a commission, task force, or committee to study voter fraud or any aspect of the voting system, including all documents discussing or making reference to the following subjects:

    a. The Executive Order creating the Presidential Advisory Commission on Election Integrity;
    b. The reasons for forming the Presidential Advisory Commission on Election Integrity;
    c. The goals and mission of the Presidential Advisory Commission on Election Integrity; and
    d. The membership of the Presidential Advisory Commission on Election Integrity, including the criteria for selection of its members.

*Id.*

office was handling the SDNY FOIA Request. *Id.* Defendant also inquired as to how the SDNY FOIA Request differed from the FOIA Request at issue. *Id.* On March 19, 2018, plaintiff explained that its May 2017 request is specific to records "concerning the Letter," and that while the request "bears some similarity" to the SDNY FOIA Request, "it does not overlap entirely." *Id.* ¶ 6, citing Ex. A to Decl. of Maximillian Feldman [Dkt. # 24-3] at 1–2.

On March 20, 2018, defendant responded to plaintiff's FOIA Request. Def.'s Resp. to Pl.'s FOIA Request, Ex. B. to Cooper Decl. [Dkt. # 21-2]. With regard to the first category of documents requested, defendant denied the request entirely pursuant to FOIA Exemptions 5, 6, and 7(A). *Id.* at 1. With regard to the second category of documents, defendant stated that it found 407 pages that could be released with redactions pursuant to Exemptions 5 and 6. Four pages were withheld completely under Exemptions 5 and 7(A). *Id.* at 2.

Plaintiff filed an appeal with DOJ on May 15, 2018. Ex. C to Compl. [Dkt. # 1-7]. The appeal was still pending in August, and so plaintiff filed the complaint in this case. Defendant answered on September 18, 2018, *see* Def.'s Answer [Dkt. # 10], and the Court ordered defendant to file a dispositive motion or a report setting forth the schedule for the completion of its production of documents. Order [Dkt. # 11]. On November 5, 2018, defendant filed a status report indicating that it would release additional information by November 14 and provide a *Vaughn* index to plaintiff by November 30. Def.'s Status Report [Dkt. # 16].

On November 14, 2018, DOJ informed plaintiff that it found approximately 100 pages of records responsive to the first document request that could be released without interfering with law enforcement proceedings. Def.'s Suppl. Resp. to Pl.'s FOIA Request, Ex. C to Cooper Decl. [Dkt. # 21-2]. Other responsive documents were withheld under Exemptions 5 and 7(A). *Id.*

On March 7, 2019, defendant filed a motion for summary judgment arguing that it had met all of its obligations under FOIA. Def.'s Mot. With its motion, defendant attached a *Vaughn* Index, which set forth four categories of documents, a description of the content of those documents, what exemptions applied to them, and how many pages the documents comprised. Summary Categorical Index ("*Vaughn* Index") [Dkt. # 21-3]. Those categories are:

- Category 1 (5 pages): A July 13, 2017 email and attachment with portions withheld pursuant to Exemption 5.

- Category 2 (4 pages): Emails sent between March and July 2017 between attorneys in the Civil Rights Division at DOJ which were completely withheld pursuant to Exemptions 7(A) and 5.

- Category 3 (1 page): Emails sent between February 13 and 14, 2017 between the Civil Rights Division and the U.S. Election Assistance Commission with portions withheld pursuant to Exemption 5.

- Category 4 (20,217 pages): Information collected from various states regarding compliance with federal voting laws, withheld pursuant to Exemptions 7(A) and 5.

*Id.* Plaintiff opposed the motion and filed its own cross-motion for summary judgment on April 11, 2019. Pl.'s Cross-Mot.; Pl.'s Mem.

On March 5, 2020, the Court determined that *in-camera* review of the withheld information in first three categories of documents would assist the Court in making a responsible, *de novo* ruling on defendant's claims of exemptions. It ordered defendant to produce the unredacted versions of the documents for inspection. Min. Order (Mar. 5, 2020).

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). When the court is presented with cross-motions for summary judgment, it analyzes the underlying facts and inferences in each party's motion in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

The mere existence of a factual dispute is insufficient to preclude summary judgment. *Id.* at 247–48. A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

In a FOIA action, the Court may award summary judgment solely on the information provided in affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely

speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).

## ANALYSIS

FOIA requires the release of government records upon request. It was enacted to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). But Congress also recognized "that legitimate governmental and private interests could be harmed by [the] release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). The Supreme Court has instructed that FOIA exemptions are to be "narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail in a FOIA action, an agency must satisfy two elements. First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). Any "reasonably segregable" information in a responsive record must be released, 5 U.S.C. § 552(b), and "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir.

1977).  "The agency bears the burden to establish the applicability of a claimed exemption to any records or portions of records it seeks to withhold." *Am. Immigration Lawyers Ass'n v. Executive Office of Immigration Review*, 830 F.3d 667, 673 (D.C. Cir. 2016).

In its motion for summary judgment, defendant argued that:  (1) it conducted an adequate search; (2) it properly withheld information pursuant to Exemptions 5, 6, 7(A), and 7(C); and (3) it complied with FOIA's segregability requirement.  *See* Def.'s Mot.  Plaintiff argues in its cross-motion that:  (1) defendant did not conduct an adequate search; (2) DOJ's *Vaughn* Index is inadequate to satisfy its evidentiary burden; (3) the information contained in the *Vaughn* Index is insufficient to justify defendant's withholdings under Exemption 7(A); (4) Exemption 5 does not justify withholding the remaining records; and (5) DOJ has not shown that it released all segregable material.  *See* Pl.'s Cross-Mot.  Plaintiff does not challenge the application of Exemptions 6 and 7(C), and thus, the Court will not address them.[2]

The Court finds that DOJ did not conduct an adequate search, but its withholdings under Exemption 5 for the first and third categories of documents were proper.  The Court also finds that the documents in the second category were properly withheld pursuant to Exemption 7(A).  Finally, the Court finds that the description of the fourth category of documents is insufficient to properly evaluate whether the claimed exemptions apply.  Thus, the Court will grant in part and deny in part defendant's motion for summary judgment, and it will grant in part and deny in part plaintiff's cross-motion for summary judgment.

---

2    Defendant's *Vaughn* Index does not indicate which records were redacted pursuant to Exemptions 6 and 7(C), but the declaration submitted by the agency describes the withholdings under these exemptions generally.

## I.    DOJ did not conduct an adequate search.

An agency's search for documents in response to a FOIA request is adequate if it is "beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011), quoting *Valencia–Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999); *see also Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). To demonstrate that it has performed an adequate search, an agency must submit a reasonably detailed affidavit describing the search. *Oglesby*, 920 F.2d at 68. An affidavit is "reasonably detailed" if it "set[s] forth the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched." *Id.*; *see also Defs. Of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009). Although there "is no requirement that an agency search every record system," an agency "cannot limit its search to only one record system if there are others that are likely to turn up the information requested." *Oglesby*, 920 F.2d at 68.

Agency affidavits attesting to a reasonable search "are accorded a presumption of good faith," *SafeCard Servs.*, 926 F.2d at 1200, that can be rebutted "with evidence that the agency's search was not made in good faith," *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001), or when a review of the record raises substantial doubt about the adequacy of the search effort. *Valencia–Lucena*, 180 F.3d at 326; *see also Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) ("If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.").

While an agency's declarations "need not 'set forth with meticulous documentation the details of an epic search for the requested records,'" *Defs. Of Wildlife*, 623 F. Supp. 2d at 91, quoting *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982), they should "describe what records were searched, by whom, and through what processes." *Id.*, quoting *Steinberg v. U.S. Dep't of*

*Justice*, 23 F.3d 548, 552 (D.C. Cir. 1994). Agency affidavits that "do not denote which files were searched, or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 371 (D.C. Cir. 1980); *see Steinberg*, 23 F.3d at 551–52 (stating that an agency affidavit must describe "what records were searched, by whom, and through what process"). Conclusory assertions about the agency's thoroughness are insufficient. *Morley v. CIA*, 508 F.3d 1108, 1121 (D.C. Cir. 2007).

DOJ's declarant explained that when the Civil Rights Division receives a request seeking specific documents, "the Division will contact the Section that specializes in the enforcement of the particular Division statute or issues referenced in the request, or that otherwise is likely to have information relevant to the subject matter of the request." Cooper Decl. ¶ 5. The Division Deputy Chief serves as the contact point regarding the search for and production of documents under FOIA, and it is his job to "ascertain all individual attorneys or personnel that may have been involved in developing the records related to a specific enforcement action." *Id.* Then, that section's staff "searches both paper and electronic records," including the email systems. *Id.*

The Civil Rights Division will also contact the Office of Assistant Attorney General ("OAAG") because OAAG has senior management authority over the Division's sections and is therefore the best source to identify which sections would be likely to have responsive records. Cooper Decl. ¶ 6. Kathleen Toomey, the Director of Operational Management at OAAG, serves as its FOIA contact point, and she identifies the attorneys who may have responsive information. *Id.* OAAG will search both paper and electronic records, including the email systems. *Id.* Defendant stated that this practice was followed in this case. *Id.* ¶ 5.

The Request was forwarded to OAAG in late July of 2017. Toomey consulted with the Deputy Assistant Attorney Generals to determine which members of the OAAG staff had worked on the issues identified in the Request. Cooper Decl. ¶ 8. Specifically, she identified John M. Gore, who has served as a Deputy Assistant Attorney General ("AG"), Acting Assistant AG, and Principal Deputy Assistant AG in the Division's Voting Section, and Thomas Wheeler, who had served as an Acting Assistant AG. *Id.* She determined that searching their emails was appropriate. *Id.* The request was also sent to the Voting Section of DOJ on September 28, 2017, although the section was advised of the request in July. *Id.* ¶ 9. Both the OAAG and Voting Section conducted a search for electronic and paper records responsive to the request. *Id.* ¶ 10.

Defendant searched electronic communications in a Division-wide email system called "O365." Cooper Decl. ¶ 11. Its electronic search identified eighty custodians as potentially having responsive information: Tom Wheeler, John Gore, Voting Section Chief Chris Herren, Voting Section Deputies, and seventy-one employees of the Voting Section, including current and former paralegals, attorneys, and clerical and administrative staff. *Id.* Defendant utilized the following search terms to search emails: Presidential Advisory Commission; Presidential Advisory Commission on Election Integrity; PACEI; "Election Integrity Commission" NEAR "voting system"; "task force" NEAR vote NEAR fraud; Study NEAR "voting system"; Pence; Kobach; Lawson; Gardner; Dunlap; Blackwell; McCormick; Dunn; Rhodes; von Spakovsky; Adams; King; Borunda.[3] *Id.* The time period for the search was from November 8, 2016 through September 27, 2017. *Id.* The agency averred that "the June 28, 2017 letter was also used as [a] search term." Suppl. Cooper Decl. [Dkt. # 28-1] ¶ 6. Defendant has represented that it received several FOIA

---

3      "Near" searches mean that the two words were within eight words of each other. Cooper Decl. ¶ 11.

requests regarding the Presidential Advisory Commission on Election Integrity ("PACEI"), and the search conducted here repeated the broader search terms and parameters used in those other requests. *Id.*

The senior management and leadership of the voting section, Chris Herren, Rebecca J. Wertz, and Robert S. Berman also identified responsive records regarding the Letter by looking through the "investigation" files related to each state. Suppl. Cooper Decl. ¶ 6. Those "investigation" files are maintained by the Voting Section staff working on these matters, and they are part of the Division's case management system. *Id.*

Plaintiff contends that defendant's search was inadequate for several reasons. First, it argues that the search terms were not specific to the Letter, and they focused on the PACEI instead, and thus they could not have uncovered all relevant documents. Pl.'s Mem. at 9. It also complains that defendant did not identify the seventy-one custodians in the Voting Section whose files and emails were searched or detail the methods used to search other electronic records. *Id.* at 9–10. Finally, plaintiff argues that "the timing of DOJ's response" to its FOIA Request "casts additional doubt on the adequacy of its search." *Id.* at 10. It points out that only one day elapsed between DOJ's inquiry regarding the difference between the FOIA Request and the SDNY FOIA Request and DOJ's response to the FOIA Request, and thus, defendant could not have meaningfully taken the distinctions into account and performed a thorough search.[4] *Id.*

The Court finds first that DOJ's search was inadequate because it did not tailor the search terms to plaintiff's specific request but simply piggy-backed on work that was already done in a

---

4       The Court is not concerned with the timing of the inquiry and the response. As the agency averred through its declarant, the inquiry regarding the difference between the two requests was sent because the two requests were quite similar and the agency wished to resolve any ambiguity. Suppl. Cooper Decl. ¶ 4. That does not mean, as plaintiff suggests, that defendant only began its search that day – DOJ states that its search began in July of 2017.

somewhat related area. The search terms are focused on the PACEI and its members; while the second part of the FOIA Request asked for communications between DOJ and PACEI concerning the letter, it also asked for communications "between any DOJ officer, employee, or agent, or any White House liaison to the Department, and any other person . . . concerning the Letter." FOIA Request. Indeed, it is unclear why the names of those on the PACEI were used as search terms, since defendant has not stated what their connection to the Letter might be. For those reasons, defendant has not met its burden to demonstrate that the search was reasonably calculated to uncover all relevant documents.

Defendant submitted a supplemental declaration which averred that "the June 28, 2017 letter was also used as [a] search term." Suppl. Cooper Decl. ¶ 6. But that vague statement did not identify the search term that was actually used, so it is not specific enough to enable plaintiff to challenge the search or the Court to evaluate it.

Second, the Court finds that defendant's showing was deficient because it did not provide any details as to how the search for electronic files, as opposed to emails, was conducted, and it has not provided any details as to how the search for hard copy files was conducted or how the files are maintained. While defendant averred that "all locations likely to contain relevant documents were searched," Cooper Decl. ¶ 15, it does not explain how electronic files are organized, if there is shared drive that contains all electronic files or if separate drives were searched, or what search terms were used.

Thus, defendant has not carried its burden to establish "beyond material doubt [ ] that it has conducted a search reasonably calculated to uncover all relevant documents" responsive to the FOIA Request. *Nation Magazine Washington Bureau v. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (internal citations and quotation marks omitted). The Court will therefore deny

defendant's motion for summary judgment on this issue and grant plaintiff's cross-motion for summary judgment. The Court will remand the case to the agency to conduct an adequate search responsive to plaintiff's FOIA Request.

## II. Exemption 5 justifies defendant's withholdings in categories 1 and 3.

Exemption 5 permits agencies to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5); *U.S. Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). A document may be properly withheld under Exemption 5 only if (1) its source is a government agency, and (2) it falls "within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. The exemption encompasses "protections traditionally afforded [to] certain documents pursuant to evidentiary privileges in the civil discovery context," including the executive "deliberative process" privilege. *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 676 (D.C. Cir. 1981). FOIA "places the burden on the agency to sustain the lawfulness of specific withholdings in litigation." *Nat. Res. Def. Council, Inc. v. Nuclear Regulatory Comm'n*, 216 F.3d 1180, 1190 (D.C. Cir. 2000).

Defendant has asserted that the deliberative process privilege and the attorney work product privilege applies to the withheld information in categories 1, 2, and 3. The Court finds that the deliberative process privilege applies to the redactions in categories 1 and 3, and thus it will not evaluate the application of the work product privilege to these documents. As for category 2, the Court finds that Exemption 7(A) applies to these pages, and thus it will not evaluate whether they fall under Exemption 5.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery," and its

purpose "is to enhance 'the quality of agency decisions' by protecting open and frank discussion among those who make them within the Government." *Klamath*, 532 U.S. at 8–9 (citations omitted), quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975). The privilege "'ensur[es] that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity. . . . Such consultations are an integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions.'" *McKinley v. Bd. Of Gov. of the Fed. Reserve Sys.*, 647 F.3d 331, 339–40 (D.C. Cir. 2011), quoting *Ryan v. U.S. Dep't of Justice*, 617 F.2d 781, 789–90 (D.C. Cir. 1980). To accomplish that goal, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative." *Judicial Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 151 (D.C. Cir. 2006), citing *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). A document is predecisional if "it was generated before the adoption of an agency policy," and deliberative if "it reflects the give-and-take of the consultative process." *Coastal*, 617 F.2d at 866; *see also Abtew*, 808 F.3d at 899.

The first category of documents is a July 13, 2017 email and attachment comprising five pages from the "Civil Rights Division's Front Office to the Voting Section Chief regarding the development of responses to Congressional inquiries for committee hearings on voting issues." *Vaughn* Index at 1. DOJ released the pages in part and explained that the withheld portions fell within the deliberative process privilege because they contain "pre-decisional comments and discussions regarding who should respond to the inquiries," *Vaughn* Index at 1, and "opinions and recommendations as to the appropriate response to convey." Suppl. Cooper Decl. ¶ 43.

Based on the Court's *in-camera* review, as well as the description in defendant's *Vaughn* Index and declaration, the Court is satisfied that the very limited and non-substantive redactions,

which appear to reflect internal attorney communications and decision-making about which individuals or organizations within DOJ will be responsible for responding to questions from Congress, were appropriately redacted under the deliberative process privilege.

The third group of documents, which comprises one page, contains Civil Rights Division emails sent between February 13 to February 14, 2017, "discussing potential areas/imperatives where two agencies could cooperate, to be addressed at an intra-agency meeting between [the Division's] Special Counsel to the Acting Assistant Attorney General and the U.S. Election Assistance Commission." *Vaughn* Index at 2. Defendant contends that these emails encompassed "pre-decisional and deliberative communications . . . in contemplation of pending litigation and foreseeable litigation regarding voting compliance issues," and that it contained "candid, frank, pre-decisional identification of proposed subject matters and issues of vital enforcement issues." Suppl. Cooper Decl. ¶ 43.

Based on the Court's *in-camera* review, as well as the *Vaughn* Index and the agency's declaration, the Court finds the redactions to be predecisional because the information discusses whether and how the agencies can decide to work together, and it specifies subject areas of proposed cooperation. The redacted information reflects an early step in the give-and-take of the consultative process. Thus, the Court is satisfied that the information redacted in the records found in category 3 was withheld properly under Exemption 5.

Furthermore, DOJ's declarant averred that it conducted a detailed review of the documents and it "released the reasonably segregable nonexempt information." Cooper Decl. ¶ 26. Based on its *in-camera* review of the documents in categories 1 and 3, the Court finds that all reasonably segregable, non-exempt information has been released. 5 U.S.C. § 552(b)(9); *see Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("Before approving the application of a

FOIA exemption, the district court *must* make specific findings of segregability regarding the documents to be withheld.").

## III. Exemption 7(A) justifies withholding the records in category 2.

DOJ also claims that Exemption 7(A) applies to the second category of records. FOIA Exemption 7(A) permits agencies to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). To justify the withholding of records under Exemption 7(A), DOJ must "demonstrate that 'disclosure (1) could reasonably be expected to interfere with (2) enforcement proceedings that are (3) pending or reasonably anticipated.'" *Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) ("*CREW*"), quoting *Mapother v. U.S. Dep't of Justice*, 3 F.3d 1533, 1540 (D.C. Cir. 1993).

Agency "records are considered 'compiled for law enforcement purposes' if 'the investigatory activity that gave rise to the documents is related to the enforcement of federal laws, and there is a rational nexus between the investigation at issue and the agency's law enforcement duties.'" *Judicial Watch v. Rossotti*, 285 F. Supp. 2d 17, 24 (D.D.C. 2003), quoting *Jefferson v. U.S. Dep't of Justice*, 284 F.3d 172, 177 (D.C. Cir. 2002). "[A]lthough [courts] give deference to an agency's predictive judgment of the harm that will result from disclosure of information, it is not sufficient for the agency to simply assert that disclosure will interfere with enforcement proceedings; it must rather demonstrate *how* disclosure will do so." *CREW*, 746 F.3d at 1098 (internal quotation marks omitted) (emphasis in original), quoting *Mapother*, 3 F.3d at 1540 (internal quotation marks and citation omitted).

The Court finds that defendant has sufficiently alleged that there are pending or prospective investigations. DOJ explained that it "has active, ongoing enforcement proceedings regarding 44

states and the District of Columbia under the National Voter Registration Act . . . and the Help America Vote Act." [5] *Vaughn* Index at 2. DOJ's declarant stated that the June 28, 2017 Letter was sent to each state to gather information relating to the Voting Section's investigation into compliance with federal law. Suppl. Cooper Decl. ¶¶ 15–16; *see Vaughn* Index at 2 ("As part of the Voting Section's nationwide enforcement efforts, it is reviewing the voter registration list maintenance procedures in each state and D.C. covered by the NVRA. . . . These actions are part of CRT's normal enforcement duties and within its statutory jurisdiction."). Thus, the *Vaughn* Index and declaration are sufficient to conclude that enforcement proceedings are pending or reasonable anticipated. *See Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) ("If the agency's principal function is law enforcement, we are 'more deferential' to the agency's claimed purpose for the particular records.").

The declarant also stated that releasing the material would be harmful:

> Disclosure would reveal the Division's strategy and evaluation of evidence pertaining to the pending enforcement proceeding against the states and the District of Columbia. Harm would result from prematurely releasing information that would reveal investigative strategies regarding the type of information sought from the states, and what data is found to be particularly probative of a state's compliance with federal voting rights statutes and the voter registration list maintenance list requirements. . . . Release at this time of the investigative materials could reveal the scope and focus of the investigations; tip off individuals or states to information of interest to law enforcement; provide subjects the opportunity to alter evidence to avoid detection; and reveal the core of the Department's review of compliance with these statutes. For example, a state made aware of data and information pertaining to another state could seek to manipulate its own data in order to present a more favorable picture of compliance with NVRA and HAVA.

---

5      On November 14, 2018, the Civil Rights Division was able to release 100 pages of documents pertaining to the investigation into the Commonwealth of Kentucky because "their release would not interfere with the law enforcement proceedings." *Vaughn* Index at 3.

Cooper Decl. ¶ 19.[6]

The first three pages of the second category of documents contain emails sent between March and July 2017, between an attorney at the Civil Rights Division of DOJ and an official of the government of Montana with regards to a request for information regarding voter information. The last page is an email between two attorneys in the Civil Rights Division regarding a state's response to the commission.

The Court finds that these pages were properly withheld under Exemption 7(A), because the state's response to the request for information was compiled for law enforcement purposes in an investigation that is currently ongoing. If disclosed, it would interfere with a law enforcement proceeding, because it would disclose the agency's priorities in the investigation and certain strategies the agency may employ in collecting evidence. Furthermore, it would reveal how the agency evaluates that evidence. Thus, the Court finds that the records in category 3 were properly withheld under Exemption 7(A), and that no material can be released without jeopardizing current or prospective litigation efforts.

## IV.     Defendant's description of category 4 was insufficient.

The fourth category encompasses 20,217 pages of documents from June 2017 to the date of DOJ's response. *Vaughn* Index at 2. The *Vaughn* Index states that "Exemption 7(A) [applies to] entire email chains and documents concerning ongoing law enforcement actions, which includes documents exemption under [Exemption 5.]" *Id.*

The *Vaughn* Index is designed to serve three important functions: "[I]t forces the government to analyze carefully any material withheld, it enables the trial court to fulfill its duty

---

6     The declaration went on to state that "a review of the responsive records determined that there is no public source material available for release that would not adversely affect pending or prospective enforcement proceedings." *Id.*

of ruling on the applicability of the exemption, and it enables the adversary system to operate by giving the requester as much information as possible, on the basis of which he can present his case to the trial court." *Judicial Watch*, 449 F.3d at 146, quoting *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987).

In reviewing the *Vaughn* Index and accompanying declaration, the court must "ascertain whether the agency has sustained its burden of demonstrating that the documents requested are . . . exempt from disclosure." *Assassination Archives & Research Ctr. v. CIA*, 334 F.3d 55, 57 (D.C. Cir. 2003) (citations omitted). If the index and declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith," *CREW*, 746 F.3d at 1088, quoting *Larson v. U.S. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009), then the agency has carried its burden. *Am. Immigration Lawyers Ass'n v. Exec. Office for Immigration Review*, 830 F.3d 667, 673 (D.C. Cir. 2016); *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998) (the government must furnish "detailed and specific information demonstrating that material withheld is logically within the domain of the exemption claimed") (internal quotation marks omitted).

The *Vaughn* Index sets forth that the records in category 4 are comprised of "multiple emails, letters, and other types of documents provided by the 45 chief election officials of the states and D.C. in response to [the Division's] June 28, 2017 letter." *Vaughn* Index at 3. The pages include the states' responses in "narrative as well as various additional items such as legislation, draft versions of proposed bills, bills regulations, codes, policies, guidance, brochures, and election manuals or descriptions regarding voter registration procedures, election processes, convicted felons, and death notices . . ., discussion of case law on particular issues such as the NVRA and

HAVA . . . [and] supplemental responses in response to [the Division's] requests for clarification and additional information." *Id*.; Cooper Decl. ¶ 18 (providing that the states also provided "drafts and negotiation documents concerning their compliance with these statutes"). The pages also contain "supplemental document requests and the states' responses . . . related to the compliance and non-compliance of the 45 states and D.C. with the NVRA and HAVA." Cooper Decl. ¶ 18.

In other words, the agency has simply lumped together thousands of pages of records – emails, memoranda, letters, draft legislation, legislation, published regulations and manuals – and asserts the pages "include [] documents" exempted under Exemptions 5 and 7(A). *Vaughn* Index at 2. It can be appropriate for an agency to group common documents together, but the index and the supporting affidavit must be "sufficiently detailed to allow the district court fairly to evaluate" the application of a claimed exemption to distinct categories of documents. *Gallant v. NLRB*, 26 F.3d 168, 173 (D.C. Cir. 1994); *see Bevis v. U.S. Dep't of State*, 801 F.2d 1386, 1389–90 (D.C. Cir. 1986) (in evaluating FOIA Exemption 7(A), the court found that the agency can take a categorical approach to justify its withholdings but it must define functional categories, review the requested documents one by one and assign each to a category, and "trace a rational link between the nature of the document and the alleged likely interference"); *see also Judicial Watch*, 449 F.3d at 147 (emphasizing the difference between a *Vaughn* Index based on commonalities versus a *Vaughn* Index based on generalities).

DOJ's description of the fourth category in its *Vaughn* Index is far too general to provide the Court or the requester with enough information to determine whether Exemptions 5 or 7(A) are applicable. The agency does not explain with sufficient detail which of those thousands of pages of documents were withheld under the exemptions, and thus, the Court cannot determine

from the *Vaughn* Index, whether either of the exemptions apply. DOJ's declaration is similarly unhelpful. It states that the documents consist of:

> internal emails and memoranda, draft responses, internal analysis and discussions, strategies, and recommendations regarding possible litigation against a state for violations of the NVRA and HAVA. This analysis and advice concerns [sic] the legal sufficiency of a state's response, and whether any possible violation of the NVRA or HAVA had occurred, with the recommendation from the line attorney to the supervisor to close a matter, pursue the matter further, or authorize a lawsuit.

Cooper Decl. ¶ 22. It then generally states that the deliberative process privilege applies because the documents encompass "analysis and strategy" and "recommendation[s] from the line attorney to the supervisor to close a matter, pursue the matter further, or authorize a lawsuit." *Id.* It does not specify which of the 20,217 pages contain recommendations or deliberative material or why the factual documents and copies of state policies and regulations are "inextricably intertwined with the deliberative material." Suppl. Cooper Decl. ¶ 43. The declaration also states that the pages encompass attorney work product:

> The information withheld reflects attorneys' legal work-product . . . . The information protected pursuant to the attorney work-product privilege was created by Department attorneys concerning the conduct and strategies of enforcement actions pursuant to the NVRA and the HAVA. These evaluations, analysis, recommendations, and discussions in contemplation of possible litigation against a state for violations of the NVRA or the HAVA reveal the very core of the Department's review of compliance with these statutes, and release of this information would undermine the Department's litigation position should the underlying enforcement actions become the subject of litigation.

Cooper Decl. ¶¶ 22, 24. While this may be true with respect to some of the over 20,000 pages, the declaration does not tie this description to any specific documents or categories of documents – it just states that it applies to the "information withheld."

Furthermore, with respect to Exemption 7(A), because defendant groups together so many different types of documents, the Court cannot properly assess whether disclosure of the broad

swath of documents covered by blanket assertions of an exemption could reasonably be expected to result in harm to the enforcement proceeding. For example, DOJ asserts that some of the withheld materials include state legislation, codes, policies, brochures, and election manuals. It is not clear how disclosing state legislation or codes would reveal agency strategy, tip off other states to information of interest,[7] or provide other states an opportunity to alter evidence. Other documents in category 4 include the states' responses to the Letter, emails, discussion of case law, and "other types of documents." In asserting that all of these documents fall within Exemption 7(A), defendant fails to link the nature of the document and the anticipated interference.

Here, it is evident that the government is claiming Exemption 7(A) because the documents fall within the states' investigative files, but the D.C. Circuit has recognized that, in the context of Exemption 7, "[i]f an agency may withhold any document merely because it relates to a pending investigation, . . . Exemption 7(A) would apply to everything properly placed in investigatory files, yet Congress plainly mandated a focus upon records, not files." *Campbell*, 682 F.2d at 262.

Without an understanding of the content of these pages and which documents were withheld pursuant to Exemptions 5 and 7(A), the Court cannot assess whether the exemptions properly apply to them. Thus, the Court does not have sufficient information to grant summary judgment in favor of either part at this time.

Because the Court has found DOJ's *Vaughn* Index legally insufficient with respect to Category 4, the Court cannot determine, at this time, whether defendant also failed to segregate non-exempt material from exempt material in its withholdings. Therefore, the Court reserves judgment on the issue of segregability until DOJ provides the Court with the needed information.

---

7    This is a particularly speculative and vague future harm since the Letter was sent to forty-four states and the District of Columbia. *Vaughn* Index at 2.

## CONCLUSION

For the forgoing reasons, defendant's motion for summary judgment is granted in part and denied in part, and plaintiff's cross-motion for summary judgment is granted in part and denied in part. The matter is remanded to the agency to conduct an adequate search in response to plaintiff's FOIA Request and to release any responsive material to plaintiff consistent with FOIA. The Court finds that the redactions in the documents in categories 1 and 3 were appropriate under Exemption 5, and the documents in category 2 were appropriately withheld under Exemption 7(A). Finally, defendant is ordered to amend or supplement its *Vaughn* Index and/or declaration to provide more detail with respect to category 4 as to what kinds of documents the category encompasses, which documents were withheld partly or fully, and under what exemptions the information was withheld and why.

A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 25, 2020